# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

———————————————————————————

MICHAEL E. SPREADBURY,                         CV 10-49-M-DWM-JCL

          Plaintiff,

                                 FINDINGS AND
                                 RECOMMENDATION OF
          vs.                      U.S. MAGISTRATE JUDGE

CHRIS HOFFMAN, DEPUTY ALBRIGHT,
DEPUTY HOCHHALTER, DEPUTY CULGAN,
DEPUTY HUDSON, UNKNOWN DEPUTY B,
UNKNOWN DEPUTY C, GEORGE CORN,
BILL FULBRIGHT, ANGELA WETZSTEON,
MATT STEVENSON, JIM BAILEY,
REGINA PLETTENBERG, RAVALLI REPUBLIC
NEWSPAPER, S.A.F.E. OF THE BITTERROOT,
RAVALLI COUNTY, OFFICER BRAD WESTON,
and CITY OF HAMILTON,

          Defendants.

———————————————————————————

Plaintiff Michael Spreadbury ("Spreadbury") is proceeding *pro se* in this action, and by Order entered May 17, 2010, the Court granted Spreadbury leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). Spreadbury has filed his Amended Complaint for the Court's review under 28 U.S.C. § 1915(e)(2).

Section 1915(e)(2) states as follows:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–

    (A) the allegation of poverty is untrue; or

    (B) the action or appeal–

        (i) is frivolous or malicious;

        (ii) fails to state a claim on which relief may be granted; or

        (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).   The standard applicable to a dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for an action which "fails to state a claim for relief" is the same standard used with respect to a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).

The Court will review Spreadbury's Amended Complaint to consider whether it can survive dismissal under the provisions of § 1915(e)(2).  *See Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1138, 1142 (9th Cir. 2005).

## I.  PLAINTIFF'S ALLEGATIONS

Spreadbury filed this action against the above-named Defendants seeking redress for what he perceives as their unfair treatment of him, and for the injustice and abuse of process Defendants allegedly inflicted upon him.  Spreadbury

contends Defendants, acting either individually or through a conspiracy, deprived him of his various rights protected under state and federal laws, the United States Constitution, and the Montana Constitution.

Spreadbury's claims stem from a dispute he had with his neighbors, Larry Robinson ("Robinson") and Denise Linell ("Linell") in Hamilton, Montana, in 2006 and 2007. Robinson engages in some business operation on his property involving the use of wood pallets and other materials. Spreadbury asserts Robinson interfered with Spreadbury's property rights by stacking wood pallets within 1 foot of Spreadbury's residence, and by blocking Spreadbury's driveway. Spreadbury claims that at various times Robinson burned the pallets and other materials upwind from Spreadbury's property. Spreadbury sought assistance from various public officials at different times to resolve his conflict with Robinson, but to no avail.

On October 10, 2006, Spreadbury's ongoing conflict with Robinson and Linell escalated when Linell lit fireworks outside Spreadbury's residence. Spreadbury confronted Linell about the fireworks, and he states he hurled a water glass towards Linell. Law enforcement officers were summoned to the scene to investigate the disturbance, and Spreadbury was issued a citation for misdemeanor criminal assault.

3

Spreadbury retained an attorney, Sasha Brownlee ("Brownlee"), to represent him with respect to the assault charge.  Spreadbury alleges Deputy County Attorney Bill Fulbright ("Fullbright") told Brownlee that "If this were anyone but Spreadbury, the charge would be dismissed."

On January 7, 2007, Spreadbury initially appeared on the charge before Justice of the Peace James Bailey ("Justice Bailey").  His trial was originally set for July 31, 2007, but was later continued to August 8, 2007.  Spreadbury asserts that Brownlee did not inform him of the new trial date.  Consequently, Spreadbury did not appear for his trial on August 8.  Spreadbury's allegations indicate he left Hamilton on August 1, 2007, and was not in Hamilton on August 8 for his trial.  Dkt. #5, ¶ 57.

Angela Wetzsteon ("Wetzsteon"), a law student intern in the Ravalli County Attorney's Office, appeared on behalf of Ravalli County at the August 8, 2007 trial which Spreadbury asserts proceeded in his absence.  Spreadbury alleges Wetzsteon prosecuted the charge without permission or supervision, and in violation of the "Montana Student Practice Act."  Spreadbury does not, however, state whether a guilty verdict or judgment of conviction was entered against him as a result of the trial on August 8, 2007.

4

Justice Bailey presided over the August 8, 2007 trial.  Spreadbury alleges Bailey acted improperly at his trial by denying a motion regarding speedy trial issues, allowing "evidence outside of discovery laws," and issuing a warrant for Spreadbury's arrest for "contempt of court."  It appears from Spreadbury's incomplete and imprecise allegations that the warrant was issued due to Spreadbury's failure to appear for his trial on August 8, 2007.

Spreadbury states that several Defendant law enforcement officers attempted to execute the arrest warrant on Spreadbury at his residence at 3:00 a.m. on August 11, 2007.  Spreadbury's allegations indicate the attempted arrest was unsuccessful because Spreadbury was not at home.

At some point Spreadbury engaged a new attorney, Matt Stevenson ("Stevenson"), to represent him.  Stevenson allegedly agreed with the prosecuting authorities that Spreadbury should voluntarily turn himself in to the law enforcement officers.  Spreadbury, however, did not turn himself in. Consequently, on August 16, 2007, Ravalli County Sheriff Deputies in five patrol vehicles pulled Spreadbury over while he was traveling on U.S. Highway 93, and arrested him pursuant to the arrest warrant that had been issued on August 8, 2007. Ultimately, the contempt-of-court charge was dismissed in September 2007.

Spreadbury states that the misdemeanor assault charge was ultimately dismissed on January 3, 2008, due to speedy trial violations.  He claims, however, that his attorney failed to represent him properly by not promptly preparing a motion requesting dismissal of the underlying misdemeanor assault charge.  And he claims Stevenson missed several omnibus hearings, thus losing opportunities to resolve the charge in 2007.  He also alleges that during the course of the criminal prosecution he was subjected to unequal treatment and deprived of his rights to due process.

In an apparently related matter, in April 2007 Spreadbury prepared a recall petition for Ravalli County Sheriff Chris Hoffman ("Hoffman") and Ravalli County Attorney George Corn ("Corn").  Spreadbury presented the petition to Ravalli County Clerk and Recorder Regina Plettenberg ("Plettenberg") for filing. Spreadbury complains that Plettenberg did not properly review or consider the petition for filing.  Although Spreadbury does not explain what transpired next, from the context of the allegations it appears that Spreadbury must have challenged Plettenberg's decision regarding the petition because Hamilton Police Officer Brad Weston ("Weston") was apparently summoned to question Spreadbury about his dispute with Plettenberg.

Finally, Spreadbury complains that the Ravalli Republic — a newspaper published in Hamilton — published stories regarding his criminal prosecution. The Ravalli Republic inaccurately reported that he had been arrested four times, and that he had been convicted.

Spreadbury alleges all of the forgoing events caused him injury entitling him to compensatory and punitive damages from Defendants.

Spreadbury's Amended Complaint is 34 pages in length. The pleading generally describes all of the various events which transpired in 2006 and 2007 relative to his conflict with Robinson and Linell, and the course of the criminal prosecution Defendants pursued against Spreadbury. Spreadbury advances 47 separate legal causes of action under state and federal law against the various Defendants.

## II.  DISCUSSION

Because Spreadbury is proceeding *pro se* the Court must construe his pleading liberally, and the pleading, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Nonetheless, *pro se* litigants are "bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

Although the Court has authority to dismiss a defective pleading pursuant to

28 U.S.C. § 1915(e)(2),

> a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*,

58 F.3d 494, 497 (9th Cir. 1995)).

Spreadbury's federal claims against the various city and county Defendants

are presented under 42 U.S.C. § 1983.  Section 1983 is the vehicle through which

a plaintiff can present claims under federal law against a state official or employee

if the plaintiff can establish that "(1) that the conduct complained of was

committed by a person acting under color of state law; and (2) that the conduct

deprived the plaintiff of a constitutional right."  *Harry A. v. Duncan*, 351 F. Supp.

2d 1060, 1072 (D. Mont. 2005) (quoting *Balistreri v. Pacifica Police Dept.*, 901

F.2d 696, 699 (9th Cir. 1988)).  The Court addressed the federal claims each in

turn.

### A.    Judicial Immunity - Justice of the Peace James Bailey

Spreadbury advances claims for injunctive relief against Justice Bailey in

Count 9 of his Amended Complaint.  Spreadbury alleges Justice Bailey acted

improperly in violation of his constitutional rights by (1) allowing an unauthorized

8

student to practice in his court, (2) issuing a warrant for Spreadbury's arrest and

insisting Spreadbury be arrested, (3) authorizing the arrest to be conducted either

during the day or at night, (4) denying Spreadbury's motions filed in his criminal

case, and (5) granting the prosecutor's motion for a continuance of the trial on the

day before the trial was scheduled to commence.  As discussed below, however,

Justice Bailey is immune from liability.

Although Justice Bailey is a state actor for purposes of § 1983 liability, a

plaintiff cannot state a claim against a judicial officer under 42 U.S.C. § 1983

"because [a] judge is absolutely immune for judicial acts." *Simmons v.*

*Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003).  *See also*

*Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  Exceptions to judicial immunity exist

only where the judge's actions were not taken in the judge's judicial capacity

(*Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir. 2000)), or where the judge has

acted "in the 'clear absence of all jurisdiction[.]' " *Sadoski v. Mosley*, 435 F.3d

1076, 1079 (9th Cir. 2006) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57

(1978) and *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)).

Justice Bailey's rulings and actions described in Spreadbury's pleading are

"unquestionably [] judicial acts." *See Simmons*, 318 F.3d at 1161.  They are acts

"normally performed by a judge" with respect to parties who have "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Additionally, Spreadbury does not contend Justice Bailey acted without jurisdiction. To the contrary, Spreadbury's allegations demonstrate that Justice Bailey had jurisdiction over the criminal prosecution pending before him. A justice of the peace in Montana has jurisdiction over a misdemeanor assault. Mont. Code Ann. §§ 3-10-303(a) and 45-5-201. Even if a judge acts in excess of certain authority, the judge is still entitled to immunity unless the judge acted in clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 13 (1991). Therefore, Justice Bailey is entitled to judicial immunity from suit.

Furthermore, § 1983 protects judicial officers against injunctive relief requested by a plaintiff. The statute precludes injunctive relief as follows:

> [A]ny action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. *See Wolfe v. Strankman*, 392 F.3d 358, 366 (9th Cir. 2004).

Therefore, Spreadbury's allegations establish he is not entitled to injunctive relief against Justice Bailey as requested in his Amended Complaint.

**B.**     **Prosecutorial Discretion and Immunity - Counts 5, 7, 8 and 45**

Spreadbury advances several claims against three individual Defendants —

two attorneys and a legal intern — associated with the Ravalli County Attorney's

Office, and who were involved in the prosecution of the misdemeanor assault

charge against Spreadbury.  In this regard, Spreadbury asserts several causes of

action against County Attorney Corn, Deputy County Attorney Fullbright, and

legal intern Wetzsteon.  Wetzsteon prosecuted Spreadbury's misdemeanor assault

charge.

**1.**     **Prosecutorial Discretion - Equal Protection - Count 7**

In Count 7 Spreadbury alleges Fullbright is liable for violation of his equal

protection rights.  Spreadbury contends Fullbright's liability arises from his

statement to Brownlee that, "If this were any person besides Spreadbury, the

charges would be dropped."

Prosecutors have significant discretion in deciding who to charge and

prosecute for a crime.

> "In our system, so long as the prosecutor has probable cause to believe that
> the accused committed an offense defined by statute, the decision whether
> or not to prosecute, and what charge to file ... generally rests entirely in his
> discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54
> L.Ed.2d 604 (1978). " '[T]he conscious exercise of some selectivity in
> enforcement is not in itself a federal constitutional violation' so long as 'the
> selection was not deliberately based upon an unjustifiable standard such as
> race, religion, or other arbitrary classification.' " *Id.* (quoting *Oyler v. Boles*,

11

368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)) (alteration in the original).

*Nunes v. Ramirez-Palmer*, 485 F.3d 432, 441 (9th Cir. 2007). Prosecutorial discretion is limited only by the prohibitions against punishing "a person because he has done what the law plainly allows him to do[,]" or seeking "additional charges solely to punish a defendant for exercising a constitutional or statutory right." *Nunes*, 485 F.3d at 441 (citations and quotations omitted). In this regard, however, the courts ordinarily "presume that public officials have properly discharged their official duties." *Id*. (quoting *Banks v. Dretke*, 540 U.S. 668, 696 (2004)).

Spreadbury's allegations against Fullbright in Count 7 fail to state a federal claim on which relief could be granted. The statement Fullbright allegedly made merely reflects his discretionary decision and his conscious exercise of selectivity as to who will be prosecuted for crimes in Ravalli County. Spreadbury does not allege the prosecutors did not have probable cause to prosecute him for misdemeanor criminal assault — Spreadbury concedes he hurled a water glass towards Linell. He also does not suggest he was discriminated against based on some unjustifiable standard, or that he was being punished for something he was permitted to do. Therefore, Count 7 should be dismissed.

2.      **Prosecutorial Immunity**

With respect to claims under federal law, prosecutors are absolutely immune from liability for damages under 42 U.S.C. § 1983.  The immunity applies to a prosecutor's conduct in performing functions "intimately associated with the judicial phase of the criminal process," *al-Kidd v. Ashcroft*, 580 F.3d 949, 958 (9th Cir. 2009) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)), and which are executed "in the course of [his or her] role as an advocate for the State."  *Id.* (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)).  In those circumstances a prosecutor is entitled to absolute immunity even if the prosecutor violates a plaintiff's constitutional rights.  *Genzler v. Longanbach,* 410 F.3d 630, 637 (9th Cir. 2005).  In contrast, prosecutors are not entitled to absolute immunity and are entitled only to qualified immunity "when they perform investigatory or administrative functions, or are essentially functioning as police officers or detectives."  *al-Kidd,* 580 F.3d at 958 (citing *Buckley*, 509 U.S. at 273).

To determine whether a prosecutor's conduct was prosecutorial in nature and, thus, entitled to absolute immunity, the courts follow a "'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.'"  *al-Kidd,* 580 F.3d at 958 (citing *Buckley*, 509 U.S.

13

at 269).  Absolute immunity extends to "actions that are connected with the

prosecutor's role in judicial proceedings[.]"  *Id.* (citation and quotation omitted).

Based on the forgoing standards, the Supreme Court has held that

prosecutors are entitled to absolute immunity for the following actions:

> [1] initiating a prosecution, [...2] presenting false or perjured testimony,
> [...3] appearing in court to apply for a search warrant, [...] and [...3]
> preparing and filing an information and a motion for an arrest warrant[.]

*al-Kidd*, 580 F.3d at 959 (citations omitted).

In *Kalina v. Fletcher*, the Supreme Court found the following additional

actions of the prosecutor were prosecutorial in nature, and were "integral to the

initiation of the prosecution[]":  (1) selecting facts to include in a certification or

affidavit, and drafting the same, (2) making a probable cause determination, (3)

making the decision to file charges, and (4) presenting information and a motion to

the court.  *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).  Thus, the prosecutor in

that case was entitled to absolutely immune for the forgoing actions which qualify

as "traditional functions of an advocate."  *Id.* at 130-131.

In contrast, the Supreme Court has found the following actions are not

prosecutorial in nature, and are entitled only to qualified immunity:

> [1] giving legal advice to the police, [...2] investigating and fabricating
> physical evidence at a crime scene, [...3] holding a press conference, [... and
> 4] acting as a complaining witness in support of a warrant application.

14

*al-Kidd*, 580 F.3d at 959 (citations omitted).

### a.   Wetzsteon

Spreadbury asserts two federal claims against Wetzsteon.  First, in Count 5 Spreadbury alleges Wetzsteon violated his right to confront witnesses at his trial - a right protected under the Sixth Amendment to the United States Constitution. Second, Spreadbury alleges, in Count 45, that Wetzsteon sought and obtained an excessive bail of $5,000 with respect to Spreadbury's alleged contempt of court charge and his arrest on August 16, 2007.  Wetzsteon's conduct in this regard allegedly violated Spreadbury's rights under the Eighth Amendment to the United States Constitution.

As a preliminary matter, the Court notes that Spreadbury alleges Wetzsteon was not a licensed attorney at the time of the events that are the subject of this lawsuit.  Nonetheless, Wetzsteon is still entitled to absolute immunity for prosecutorial actions she took.  As discussed above, the prosecutorial immunity analysis employs a functional approach, and the immunity extends to persons involved in prosecutorial functions regardless of their identity, title, or status.

Spreadbury's allegations against Wetzsteon pertain to actions she took which are intimately associated with the judicial phase of the criminal process in which Spreadbury was involved.  Spreadbury alleges Wetzsteon deprived him of

his right to confront witnesses at trial, and that she sought and obtained an excessive bail that the court imposed on Spreadbury.  Regardless of whether the alleged actions may have violated Spreadbury's constitutional rights, Wetzsteon is entitled to absolute prosecutorial immunity for the conduct alleged under the decisional law discussed above.  Therefore, Counts 5 and 45 should be dismissed.

### b.    Corn and Fullbright

Spreadbury asserts various allegations against both Corn and Fullbright stemming from their conduct relative to Spreadbury's criminal prosecution. Throughout his complaint Spreadbury alleges Corn and Fullbright are liable for conduct which he characterizes as having been undertaken in their administrative capacities, or while performing administrative duties.

In general, the scope of absolute prosecutorial immunity is broad and extends to all prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, ___ U.S. ___, 129 S. Ct. 855, 860 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, (1976)).  The United States Supreme Court, however, has imposed some limitations on the immunity recognizing that there may exists circumstances where a prosecutor is not acting as an officer of the court relative to a "criminal process," such as when the prosecutor is engaging in "investigative or administrative tasks." *Id*., 129 S.

16

Ct. at 861 (citing *Imbler*, 424 U.S. at 431, n.33).[1]  To properly determine whether a prosecutor's specific conduct at issue falls within the scope of prosecutorial immunity a court must take a "functional approach" with the analysis.  *Id*.  Thus, although a plaintiff may characterize certain conduct as "administrative," the conduct at issue may still be functionally associated with the judicial phase of the criminal process.  *See id*., 129 S. Ct. at 861-864.

Under the functional approach, the Supreme Court has concluded that certain activities of a supervisory prosecutor, while arguably may qualify as administrative in some manner, are entitled to prosecutorial immunity when the activities are "directly connected with the conduct of a trial[]" or prosecution.  *Van de Kamp*, 129 S. Ct. at 862.  A supervisory prosecutor's conduct in either training or supervising a deputy prosecutor "necessarily require[s] legal knowledge and the exercise of related discretion" relative to the conduct of a prosecution or trial.  *Id*. A supervisory prosecutor's conduct in supervising a subordinate trial prosecutor's conduct pertains to the "preparation ... for ... trial[,]" or court-related tasks — conduct to which prosecutorial immunity attaches.  *Id*. (quoting *Imbler*, 424 U.S. at 431, n.33).  A supervising prosecutor's "general" supervision and training of a

---

[1]Typical administrative tasks to which absolute immunity may not attach include "workplace hiring, payroll administration, the maintenance of physical facilities, and the like."  *Van de Kamp*, 129 S. Ct. at 862.

subordinate in circumstances where there is "an intimate connection between prosecutorial activity and the trial process" is entitled to prosecutorial immunity because the supervisory conduct is "directly connected with the prosecutor's basic trial advocacy duties." *Id.*, 129 S. Ct. at 863.

Spreadbury has attempted to assert claims against Corn and Fullbright for tasks they performed in their administrative capacities to avoid the prosecutorial immunity they would otherwise enjoy. Spreadbury's administrative-task claims, however, all stem from Corn and Fullbright's supervision and training of Wetzsteon with respect to her conduct in prosecuting Spreadbury. Therefore, pursuant to *Van de Kamp*, Corn and Fullbright are entitled to prosecutorial immunity for all federal claims advanced against them in Spreadbury's Amended Complaint, and those claims should be dismissed.

### 3. <u>Injunctive Relief</u>

In Count 8 of Spreadbury's Amended Complaint he requests injunctive relief against Fullbright and Corn. Spreadbury alleges Fullbright and Corn violated his rights under the Sixth, Seventh, and Fourteenth Amendments to the United States Constitution in connection with the prosecution of the misdemeanor assault charge against Spreadbury. Spreadbury states that the Ravalli County Attorney's Office has initiated other prosecutions against him which are either

ongoing, or will commence in the future.  Spreadbury alleges he is involved in a

"current controversy or case" with the Ravalli County Attorney's Office, and he

believes he will suffer future violations of his constitutional rights if he does not

obtain injunctive relief against Fullbright and Corn.

Although the doctrine of prosecutorial immunity shields prosecutors from

liability for damages, it "does not bar an action for declaratory or prospective

injunctive relief."  *Fry v. Melarango*, 939 F.2d 832, 839 (9th Cir. 1991).

Therefore, the Court will address Spreadbury's claims for injunctive relief

separately.

Although prosecutorial immunity does not apply to Spreadbury's claims for

injunctive relief, the claims fall within a category of claims from which the federal

courts must abstain.  There is a strong policy against federal intervention in

pending state judicial processes in the absence of extraordinary circumstances.

*Younger v. Harris*, 401 U.S. 37, 43-45 (1971).  *See also Gilbertson v. Albright*,

381 F.3d 965, 973 (9th Cir. 2004) (quoting *Middlesex County Ethics Committee v.

Garden State Bar Association*, 457 U.S. 423, 431 (1982)).  *Younger* directs federal

courts to abstain from granting injunctive or declaratory relief that would interfere

with pending state judicial proceedings.  *Gilbertson*, at 381 F.3d at 968.

The Ninth Circuit has stated that *Younger* abstention is appropriate if "(1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Gartrell Constr., Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991) (citing *Middlesex County*, 457 U.S. at 432).  *See also Gilbertson*, 381 F.3d at 976 n.10.  Stated another way,

> *[i]f* a state-initiated proceeding is ongoing, and *if* it implicates important state interests [...], and *if* the federal litigant is not barred from litigating federal constitutional issues in that proceeding, *then* a federal court action that would enjoin the proceeding, or have the practical effect of doing so, would interfere in a way that *Younger* disapproves.

*Gilbertson*, at 978 (emphasis in original).

The first element of *Younger* abstention is established in this case. Spreadbury alleges there exists ongoing and possible future criminal prosecutions against him in the Twenty-First Judicial District Court, Ravalli County, Montana. The injunctive relief sought by Spreadbury would directly interfere with those proceedings.

Secondly, the state court proceedings implicate important state interests. The State of Montana, through its state and local prosecuting offices, has a significant state interest in prosecuting conduct that is criminal under the laws of

20

Montana.  This Court may not interfere with those interests when that prosecutorial process is ongoing as alleged by Spreadbury.

Finally, with regard to Spreadbury's opportunity in the state court proceedings to raise any issues he seeks to present to this Court, the burden is on him to establish "that state procedural law bar[s] presentation of [his] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)  (quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979)).  Spreadbury has not set forth any allegation suggesting he will be barred from presenting any issues to the state court with respect to the prosecutors' conduct he anticipates will occur.  To the contrary, he has opportunities under the Montana Rules of Criminal Procedure and state law to file motions or to request certain forms of relief from the state court.

Based on the forgoing, abstention is warranted under the circumstances of this case.  Spreadbury's claims for injunctive relief in Count 8 should be dismissed.

## C.   **Equal Protection**

Spreadbury advances various causes of action against several of the Defendants for alleged violations of his equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any

21

person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV, § 1. The clause essentially directs "that all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S.

432, 439 (1985). Ordinarily, the clause serves to prohibit a state actor from

discriminating against an individual based on his or her membership in a protected

class, or based on a particular classification in which the individual is placed. *The*

*Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d

690, 702-03 (9th Cir. 2009). Thus, in general, to state an equal protection claim

under 42 U.S.C. § 1983 "a plaintiff must show that the defendants acted with an

intent or purpose to discriminate against the plaintiff based upon membership in a

protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir.

2005) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)).

An equal protection claim may, however, be premised on a state actor's

unique treatment of an individual - described as a "class of one" claim. *North*

*Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). To obtain

relief on a class-of-one claim, the plaintiff must establish that the state actor

"intentionally, and without rational basis, treated the plaintiff differently from

others similarly situated." *Id*. (citations omitted). The "plaintiff must show that

the discriminatory treatment 'was intentionally directed just at him, as opposed ...

22

to being an accident or a random act.'"  *Id.* (quoting *Jackson v. Burke*, 256 F.3d

93, 96 (2nd Cir. 2001)).

      **1.**      <u>**Ravalli County - Count 4**</u>

     In Count 4 Spreadbury alleges Ravalli County is liable by virtue of policy

decisions made by Corn.  Spreadbury alleges Corn is authorized as the county

attorney to make final policy decisions on behalf of Ravalli County, and that as a

matter of county policy Corn authorized Wetzsteon — an unauthorized attorney —

to prosecute Spreadbury.  Spreadbury alleges this Ravalli County policy violated

his rights to equal protection.

     A county or municipal governmental entity, such as Ravalli County,

qualifies as a "person" within the meaning of 42 U.S.C. § 1983, and can be sued

for damages under that statute.  *Monell v. Dept. of Social Services*, 436 U.S. 658,

690 (1978).  A plaintiff must demonstrate that the municipality *itself* acted

deliberately or culpably, and that there is a direct causal link between the

municipality's action and the deprivation of a federal right.  *Board of County*

*Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).  Thus, a

local governmental entity can be subject to liability under *Monell* and § 1983, but

only "if a 'policy or custom' of the [entity] deprived the [plaintiffs] of their

constitutional rights." *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1202 (9th Cir. 2009).

Spreadbury's allegations in Count 4 fail to state a claim on which relief can be granted.  He does not allege that Corn's policy decision made on behalf of Ravalli County treated Spreadbury differently than any other similarly situated person, or that the decision discriminated against him based on his membership in a protected class or based on a particular classification.  Finally, his allegations do not invoke the elements of a cause of action under a "class of one" claim described above.  Therefore, Spreadbury's equal protection claim in Count 4 should be dismissed.

### 2.    Plettenberg and Weston - Counts 38 and 41

Spreadbury alleges Plettenberg and Weston violated his equal protection rights relative to his attempt to file a petition to recall Hoffman and Corn.  Spreadbury asserts Plettenberg treated his petition differently and reviewed it outside the guidelines of the Montana Recall Act.  Then, when Officer Weston came to investigate Spreadbury's dispute with Plettenberg regarding the petition, Spreadbury alleges Weston "did treat Spreadbury differently in information requested, and actions taken with information voluntarily given to" Weston.  Dkt. #5, ¶ 280.

The forgoing allegations fail to state any equal protection claim. Spreadbury alleges only that Plettenberg treated "petitions" in general differently, not that she treated Spreadbury differently.  With respect to Weston, although Spreadbury alleges Weston treated him differently, the context of the allegations suggest the different treatment was due to the type of investigation Weston was conducting, i.e. Weston treated Spreadbury differently based on the information he requested, and in light of the actions he took based on the information received from Spreadbury.  Significantly, Spreadbury does not allege Weston treated him differently than any other similarly situated person.  Therefore, Counts 38 and 41 should be dismissed.

### 3.   **Albright - Count 17**

Spreadbury alleges Ravalli County Sheriff Deputy Chris Albright ("Albright") is liable for violation of Spreadbury's equal protection rights with respect to Albright's investigation of Spreadbury's confrontation with Linell on October 10, 2006.  Spreadbury contends that when Albright arrived at the scene of the disturbance, Albright did not offer equal protection in processing the crime scene, and engaged in unequal evidence collection.  Although Spreadbury does not elaborate further as to the factual matters which support his allegations, the Court

presumes Spreadbury is suggesting that Albright did not equally investigate Linell for any misdemeanor conduct.

Spreadbury's allegations do not state an equal protection claim against Albright.  Spreadbury does not allege that Albright treated him differently than any other similarly situated person — a person for whom probable cause existed to believe the person committed an assault.

More importantly, however, Spreadbury has no constitutional right to any particular criminal investigation.  Even if a plaintiff could establish, as a factual matter, that law enforcement officers conducted an inadequate criminal investigation the plaintiff cannot sustain a viable legal claim under 42 U.S.C. § 1983.  *Chang v. Shin*, 2002 WL 1299873, *7 (C.D. Cal. 2002).  There is no cognizable legal cause of action against law enforcement officers for their conduct in inadequately investigating alleged criminal conduct.  *Gomez v. Whitney*, 757 F.2d 1005, 1005-6 (9th Cir. 1985).  Law enforcement officers have no affirmative duty to a plaintiff to investigate a crime in a particular way.  *Gini v. Las Vegas Metropolitan Police Dept.*, 40 F.3d 1041, 1045 (9th Cir. 1994).  Furthermore, law enforcement officers' failure to investigate a crime committed by a third party does not rise to the level of a violation of any constitutional right.  *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996).  "[A] private citizen lacks a judicially

cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Based on the foregoing, Spreadbury's equal protection allegations against Albright regarding Albright's investigation of Spreadbury and Linell's conduct on October 10, 2006, fail to state a claim for relief. Count 17 should be dismissed.

### D.   First Amendment Claims - Counts 16 and 39

#### 1.   Freedom of Speech

Spreadbury alleges Albright and Ravalli County are liable for engaging in a practice of "manipulating" a person's speech. Specifically, Spreadbury asserts that on October 10, 2010, when Albright interviewed Spreadbury relative to his dispute and disturbance with Linell, Albright manipulated his radio or recording equipment "to alter the transcript of [Spreadbury]." Dkt. #5, ¶ 156. As best as can be ascertained from Spreadbury's vague allegations, it appears that Spreadbury contends Albright manipulated his equipment so that it did not record all of Spreadbury's statements and, consequently, the transcript of Spreadbury's statements did not accurately set forth Spreadbury's "true speech" and statements made to Albright. Therefore, Spreadbury alleges Albright conduct, and Ravalli County's practice of failing to record all of a person's statements, deprived him of

27

his rights to freedom of speech protected under the First Amendment to the United States Constitution.

The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech[.]"  U.S. Const. amend. I.  The First Amendment "forbids the abridgement of speech[,]" *Villegas v. City of Gilroy*, 484 F.3d 1136, 1139 (9th Cir. 2007), and protects an individual's right to engage in free speech subject to reasonable limitations which may be imposed on the speech.  *See Berger v. City of Seattle*, 569 F.3d 1029, 1035-36 (9th Cir. 2009).  Although the express text of the amendment imposed a prohibition against Congress, the prohibition also applies to states and their political subdivisions.  *Comite de Jornaleros de Redondo Beach v, City of Redondo Beach*, 607 F.3d 1178, 1184 n.2 (9th Cir. 2010).

Spreadbury's allegations against Albright and Ravalli County fail to state a claim under the First Amendment.  Spreadbury merely contends that Albright did not record all of the statements made by Spreadbury, not that Albright or Ravalli County prevented him from engaging in any speech.  Since the allegations fail to allege Albright's conduct abridged Spreadbury's free speech, Count 16 should be dismissed.

## 2.    **Right to Petition**

Spreadbury alleges Plettenberg violated his rights under the First Amendment to the United States Constitution when she refused to file Spreadbury's petition to recall Hoffman and Corn.  His allegations, however, fail to advance a meritorious claim.

The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances."  U.S. Const. amend. I.  "[T]he right to petition extends to all departments of the Government[.]"  *BE & K Const. Co. v. National Labor Relations Board*, 536 U.S. 516, 525 (2002) (quoting *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

Generally, in a First Amendment right-to-petition claim a plaintiff must allege and prove that the official's conduct rendered "any state court remedies ineffective."  *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998) (citation omitted).  Thus, a plaintiff's right to petition the government is not violated where the plaintiff had opportunities to contest a state actor's conduct in refusing to file a petition.  *See Woll v. County of Lake*, 582 F. Supp. 2d 1225, 1231 (N.D. Cal. 2008).

Spreadbury's allegations against Plettenberg do not establish that her conduct violated Spreadbury's right to petition the government.  Spreadbury had an opportunity to challenge Plettenberg's conduct, and to seek redress for her refusal to file Spreadbury's petition under Mont. Code Ann. § 2-16-615(2).  The referenced provision of Montana law permitted Spreadbury to apply to the district court for a writ of mandamus requiring Plettenberg to file Spreadbury's petition.  Spreadbury does not allege that Plettenberg interfered with his remedy available to him under Mont. Code Ann. § 2-16-615(2), or that she rendered the remedy ineffective.  Therefore, Spreadbury's claim against Plettenberg for an alleged violation of his right to petition the government fails to state a claim for relief and should be dismissed.

### E.    <u>Speedy Trial - Count 44</u>

Spreadbury contends his right to a speedy trial protected under the Sixth Amendment to the United States Constitution was violated during the course of the criminal assault prosecution against him.  In the context of Spreadbury's allegations, however, the only individuals who would have been responsible for enforcing or upholding his Sixth Amendment right to a speedy trial were Spreadbury, his retained defense attorney — Sasha Brownlee, the prosecutors, or Justice Bailey.  Spreadbury has not named Brownlee as a defendant in this action.

And his only potential claim against Brownlee — a retained attorney and not

acting under color of state law — would be one for negligence for failing to

enforce Spreadbury's speedy trial rights.  The prosecutors and Justice Bailey are,

as discussed above, entitled to immunity from liability under § 1983 with respect

to Spreadbury's claims.  Accordingly, Spreadbury has failed to state a claim on

which relief could be granted, and Count 44 should be dismissed.

###### F.       Fourth Amendment - Arrests - Counts 20, 23, 26, and 46

Spreadbury advances several claims alleging that various Defendants

violated his right under the Fourth Amendment to the United States Constitution

to be free from unreasonable seizures or arrests.  He claims Defendants Ravalli

County Sheriff Deputy Lawrence Hochhalter, Deputy B, and Deputy C are liable

for attempting to execute an arrest warrant on Spreadbury at his residence at 3:00

a.m. on August 11, 2007.  The warrant was issued based on Spreadbury's failure

to appear for his criminal trial on August 8, 2007.

The Fourth Amendment provides that "[t]he right of the people ... against

unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. amend.

IV.  "A person is seized by the police and thus entitled to challenge the

government's action under the Fourth Amendment when the officer, ' "by means

of physical force or show of authority," ' terminates or restrains his freedom of

movement[.]" *Brendlin v. California*, 551 U.S. 249, 254 (2007).  Absent an actual seizure or arrest, "there is at most an attempted seizure, so far as the Fourth Amendment is concerned[,]" and the circumstances do not invoke the protections under the Fourth Amendment.  *Id*.

Spreadbury's allegations describe the officers' conduct on August 11, 2007, only as an "attempt to seize" Spreadbury.  Spreadbury was not arrested at that time, and Spreadbury's allegations also suggest he was not even at the residence during the attempted seizure since he states he departed on August 1, 2007.  Therefore, since Spreadbury was not seized on August 11, 2007, he fails to state any Fourth Amendment claim for relief, and Counts 20, 23, and 26 should be dismissed.

Spreadbury advances a separate Fourth Amendment claim in Count 46 of his Amended Complaint.  Spreadbury contends the warrant for his arrest issued on August 8, 2007, for his failure to appear at his criminal trial "did not state a crime."  Dkt. #5, ¶ 304.  Spreadbury alleges he had not committed any contempt of court based on his failure to appear at his trial because his attorney, Sasha Brownlee, was present at the trial scheduled for August 8, 2007.  Thus, Spreadbury contends the arrest warrant was improvidently issued in the absence of any conduct constituting a crime and, consequently, his arrest on August 16, 2007,

pursuant to the arrest warrant constituted a false arrest.  Spreadbury does not,

however, identify any particular Defendant who is liable for the alleged Fourth

Amendment violation set forth in Count 46.

Spreadbury's allegations in Count 46 fail to state any claim for relief.  For

the reasons discussed above, Justice Bailey is immune from liability for his

conduct in issuing the subject arrest warrant on August 8, 2007.

With respect to any other unspecified Defendant against whom Spreadbury

intends to impose liability for his arrest on August 16, 2007, Spreadbury's

allegations do not state any cognizable violation of the Fourth Amendment.  "An

arrest pursuant to a facially valid warrant does not establish a constitutional

violation."  *Valdez v. Linder*, 2010 WL 378354, *3 (D. Mont. 2010) (citing *Baker

v. McCollan*, 443 U.S. 137, 144 (1979)).  An arrest that is made pursuant to a

warrant which conforms to the requirements of the Fourth Amendment "gives rise

to no claim under the United States Constitution."  *Baker*, 443 U.S. at 144.  The

Fourth Amendment requires only that "no Warrants shall issue, but upon probable

cause, supported by Oath or affirmation, and particularly describing ... the person[]

... to be seized."  U.S. Const. amend. IV.

Spreadbury does not expressly allege that the subject arrest warrant was

issued in the absence of a finding of probable cause as required by the Fourth

Amendment.  Rather, Spreadbury simply contends that his absence from his

August 8, 2007 trial does not constitute contempt of court since his attorney was

present at the trial.  Thus, Spreadbury simply asserts the factual circumstances do

not support Justice Bailey's finding of probable cause for the issuance of the arrest

warrant.  Spreadbury essentially contends only that Justice Bailey's probable cause

determination was improper, not that Justice Bailey failed to make a probable

cause determination at all.  Thus, Spreadbury does not challenge the facial validity

of the warrant.

Law enforcement officers are entitled to rely on a judge's decision that

probable cause exists to support the issuance of an arrest warrant, and the officers

are not subject to liability if they relied on the judge's decision in good faith.

*Valdez*, 2010 WL 378354 at *3.  "Generally, a person arrested pursuant to a

facially valid warrant cannot prevail in a § 1983 suit for false arrest; this is so even

if the arrest warrant is later determined to have an inadequate factual foundation."

*Juriss v. McGowan,* 957 F.2d 345, 350 (7th Cir. 1992) (citing *Baker v. McCollan*,

443 U.S. 137, 143 (1979)).

Spreadbury states his arrest on August 16, 2007, was made pursuant to the

arrest warrant issued on August 8, 2007.  Because Spreadbury challenges only the

factual basis for the issuance of the warrant, and because he does not allege either

34

that the warrant was facial invalid or that the officers did not rely on the warrant in good faith, his allegations fail to state any claim for relief under the Fourth Amendment. Count 46 should be dismissed.

### G. **Supplemental Jurisdiction Over Spreadbury's State Law Claims**

Based on the forgoing discussion, the Court concludes that all of Spreadbury's federal claims under 42 U.S.C. § 1983 should be dismissed. Therefore, the Court must consider whether it should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any other claims Spreadbury advances under Montana law.

Section 1367 provides that where a district court has original jurisdiction in a civil action it shall also have supplemental jurisdiction over other claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). However, the district court may decline to exercise supplemental jurisdiction for various reasons stated in the statute, including when "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, and courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors including the circumstances of the particular case, the nature of the state

35

law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).

Because the Court recommends dismiss of all of Spreadbury's federal claims, it is further recommended that the District Court should decline to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3).  Any claims Spreadbury may have under Montana law are matters of state and local concern, and are more properly addressed in the courts of the State of Montana.

## III.  CONCLUSION

Based on the forgoing, **IT IS HEREBY RECOMMENDED** that Spreadbury's federal claims set forth in his Amended Complaint should be dismissed.  Spreadbury's claims advanced under Montana law should be dismissed without prejudice.

DATED this 7th day of October, 2010.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

36